**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**IN RE: PROTON-PUMP INHIBITOR PRODUCTS LIABILITY LITIGATION**

**This Document Relates to:**

***Rieder v. AstraZeneca Pharmaceuticals LP,*** **2:19-cv-00850**

**2:17-MD-2789 (CCC) (LDW)**
**(MDL 2789)**

**Judge Claire C. Cecchi**

**REPORT AND RECOMMENDATION**
**OF SPECIAL MASTER ELLEN REISMAN**
**REGARDING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**
**ON STATUTE OF LIMITATION GROUNDS**

Plaintiff James Rieder is an Ohio resident who took prescription Nexium sold by Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca LP, and Merck Sharp & Dohme Corporation (collectively, "Defendants") from 2002 until early 2015.[1] Nexium is a proton pump inhibitor ("PPI") prescribed for patients with gastroesophageal reflux disease ("GERD"). In October 2014, Plaintiff Rieder was

[1] PSC's Br. Opposing Defs.' Mots. for Summ. J. on Failure to Warn Preemption, Ex. 283 at 138:12-18 [hereinafter "Rieder Dep."] No. 2:17-md-2789, ECF No. 731-37.

diagnosed with chronic kidney disease ("CKD").[2] He filed this lawsuit directly in this MDL on January 21, 2019.[3]

Defendants argue that Plaintiff Rieder's claims are barred by Ohio's two-year product liability statute of limitations.[4] Defendants identify three possible dates on which Plaintiff Rieder's cause of action accrued under Ohio law and triggered the running of the limitations period.[5] Defendants first assert that Plaintiff Rieder's CKD diagnosis in October 2014 triggered the statute of limitations.[6] In the alternative, they argue that if the limitations period did not begin to run in October 2014, it started to run in 2015 when Plaintiff Rieder stopped taking Nexium.[7] Finally, they argue that, even if the limitations period did not begin to run on these earlier dates, it began to run when Plaintiff Rieder retained counsel in September 2016 prior to filing this lawsuit.[8]

The Plaintiffs' Steering Committee ("PSC"), on behalf of Plaintiff Rieder, opposed the motion, arguing that the undisputed material facts do not establish, as a

---

[2] PSC's Suppl. Statement of Material Facts in Opp'n to Defs.' Am. Mot. for Summ. J. as to Pl. James Rieder on Statue of Limitation Grounds 6, No. 2:17-md-2789, ECF No. 757-1.
[3] Rieder Compl. ECF No. 1.
[4] Defs.' Am. Mem. of Law in Supp. of Mot. for Summ. J. as to Pl. James Rieder on Statute of Limitations Grounds 1, ECF No. 44 [hereinafter Defs.' Summ. J. Mem.].
[5] *Id.* at 2-3.
[6] *Id.* at 2.
[7] *Id.* at 2-3.
[8] *Id.* at 3-4.

matter of law, that the Ohio statute of limitations ran prior to the filing of this lawsuit. The PSC argues that the record with respect to Defendants' first two proposed triggers, Plaintiff Rieder's 2014 CKD diagnosis and his 2015 decision to stop using Nexium, is insufficient to establish as a matter of undisputed material fact that Plaintiff Rieder knew or should have known in the exercise of reasonable diligence that his CKD was related to his consumption of Nexium.[9] It also argues that his retention of counsel in 2016 is insufficient as a matter of law to trigger the statute of limitations, and that even if it were, his inclusion in the parties' Tolling Agreement on July 31, 2018, stayed the running of the limitations period until after Plaintiff Rieder filed this lawsuit.[10]

After reviewing the briefing and hearing oral argument on April 5, 2022,[11] I recommend that Defendants' motion be denied. With respect to the first two potential trigger dates in 2014 and 2015, there are disputed issues of material fact that a jury must decide at trial in order to determine whether this lawsuit is time-barred. Defendants' motion as to the third potential date of 2016 also fails as retention of counsel is insufficient to trigger the statute of limitations under Ohio

---

[9] PSC's Resp. to Defs.' Am. Mot. for Summ. J. as to Pl. James Rieder on Statute of Limitations Grounds 12-19, No. 2:17-md-2789, ECF No. 716 [hereinafter PSC's Summ. J. Opp'n Mem. in *Rieder*].

[10] *See id.* at 5-9; Stipulation Regarding Tolling of the Statute of Limitations, No. 2:17-md-2789, ECF No. 232; PSC's Summ. J. Opp'n Mem. in *Rieder*, Ex. 6, Row 6,028, No. 2:17-md-2789, ECF No. 716-9.

[11] Oral Args., Apr. 5, 2022, attached hereto in pertinent part as Ex. 1.

law. In any event, the stay of the tolling period under the Tolling Agreement would make this lawsuit timely, even if the limitations period had begun to run in September 2016.

## I. LEGAL STANDARD

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[12] The evidence of the non-moving party is to be trusted and all inferences shall be drawn in its favor.[13] The moving party bears the burden "of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact."[14] If the moving party meets this burden, the non-moving party "must set forth specific facts and present affirmative evidence demonstrating that there is a genuine issue for trial" and the non-moving party "may not 'rest upon mere allegation[s] or denials of [his] pleading[.]"[15] For a court to

---

[12] *Melrose Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (citing *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)).
[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).
[14] *See Alley v. MTD Prods. Inc.*, No. 3:17-cv-3, 2017 U.S. Dist. LEXIS 208742, at *5 (W.D. Pa. Dec. 20, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).
[15] *Denson v. Atl. Cnty. Dep't of Pub. Safety,* No. 13-5315, 2016 U.S. Dist. LEXIS 132181, at *11 (D.N.J. Sept. 27, 2016) (citations omitted).

consider an issue genuine, "there must be sufficient evidence . . . for a reasonable jury to find for the nonmovant."[16]

## II. DISCUSSION AND ANALYSIS

### A. Ohio's Two-Year Statute Of Limitations For Product Liability And Personal Injury Claims

The Parties agree that Ohio law applies to Plaintiff Rieder's lawsuit because he is an Ohio resident who took Nexium and allegedly suffered injury while living in Ohio.[17] I agree.[18]

Product liability claims and personal injury claims in Ohio are governed by the Ohio Product Liability Act ("OPLA").[19] Under OPLA, "an action based on a

---

[16] *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

[17] *See* Defs.' Summ. J. Mem. 11; PSC's Summ. J. Opp'n Mem in *Rieder* 2 n.5.

[18] Case Management Order ("CMO") No. 7 states that "[f]iling an action directly in the MDL pursuant to this Order will not determine the applicable choice of law, including the choice of law for any of the claims in the action and for statute of limitations purposes." CMO No. 7, at 6, No. 2:17-md-2789, ECF No. 112. The choice of law rules of Plaintiff Rieder's home state, where he could have properly filed the case and had it transferred to the MDL, apply. *See In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. 1:19-md-2875, 2021 U.S. Dist. LEXIS 17728, at *52 (D.N.J. Jan. 29, 2021). Plaintiff Rieder's home state is Ohio, where he lived at all times relevant to this litigation, ingested Nexium, and was diagnosed with and treated for CKD. Under Ohio choice of law rules, it is presumed that "the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984). Plaintiff Rieder's home state of Ohio is the place of injury, and no other state has a more significant relationship to the lawsuit.

[19] *See* Ohio Rev. Code §§ 2307.71-80 (2009); *Doty v. Fellhauer Elec., Inc.*, 888 N.E.2d 1138, 1142 (Ohio Ct. App. 2008).

product liability claim and an action for bodily injury…shall be brought within two years after the cause of action accrues."[20] Generally, a cause of action accrues at the time the wrongful act was committed.[21] However, Ohio law recognizes the "discovery rule" in certain situations where an injury may not immediately manifest.[22] OPLA essentially codified the discovery rule for latent injury cases previously developed by the Ohio courts.[23] The OPLA provision applicable to this case states that a cause of action for bodily injury:

[20] Ohio Rev. Code § 2305.10(A).

[21] *See O'Stricker v. Jim Walter Corp.*, 447 N.E.2d 727, 730 (Ohio 1983).

[22] *See e.g., O'Stricker*, 447 N.E.2d at 732 (adopting the "discovery rule" for accrual for claims of bodily injury under § 2305.10, which closely tracks the language of the exposure provisions set forth in § 2305.10(B)(1)-(B)(5)); *Colby v. Terminix Int'l Co.*, No. 96-CA-0241, 1997 Ohio App. LEXIS 1043, at *6 (Ohio Ct. App. Feb. 10, 1997); *Grimme v. Twin Valley Cmty. Local Sch. Dist. Bd. of Educ.*, 878 N.E.2d 1096, 1098 (Ohio Ct. App. 2007) ("[T]he Ohio Supreme Court articulated the following 'discovery rule' for accrual of bodily injury actions under R.C. 2305.10…."); *Doane v. Givaudan Flavors Corp.*, 919 N.E.2d 290, 295 (Ohio Ct. App. 2009).

[23] *Compare O'Stricker*, 447 N.E.2d at 732 (formulating and adopting the discovery rule "When an injury does not manifest itself immediately, the cause of action arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured, whichever date occurs first.") *with* § 2305.10(B)(1) (adopting nearly identical language).

> that is caused by exposure to hazardous or toxic chemicals, ethical drugs, or ethical medical devices accrues upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has an injury that is related to the exposure, or upon the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure, whichever date occurs first.[24]

Thus, the discovery of an injury alone is insufficient to start the running of the statute of limitations; the plaintiff must have knowledge of a connection between his injury and the cause of such injury, and such connection can be established either by plaintiff being informed of the connection by a medical authority or through the exercise of reasonable diligence.[25]

---

[24] Ohio Rev. Code § 2305.10(B)(1). Nexium is an "ethical drug" within the meaning of this statute. Ohio Rev. Code § 2307.71(A)(4). Note, § 2305.10(B)(1) mirrors the other provisions in Section (B) relating to situations where injury due to exposure may not immediately manifest. *See, e.g.* § 2305.10(B)(2) (relating to chromium exposure), § 2305.10(B)(3) (relating to veterans exposed to chemical defoliants, herbicides or other agents), § 2305.10(B)(4) (relating to exposure to diethylstilbestrol or other nonsteroidal synthetic estrogens), and § 2305.10(B)(5) (relating to asbestos exposure).

[25] *See Baxley v. Harley-Davidson Motor Co.*, 875 N.E.2d 989, 990-91 (Ohio Ct. App. 2007) ("The *O'Stricker* discovery rule is two-pronged: when an injury does not manifest itself immediately, the claim accrues when the plaintiff becomes aware of (1) his injury and (2) the cause of his injury.") (citing *O'Stricker*, 447 N.E.2d at 732); *Burgess v. Eli Lilly & Co.*, 609 N.E.2d 140, 141 (Ohio 1993) ("[T]his court held that knowledge of the injury's cause is part of the knowledge required before a statute of limitations may begin to run."); *Yacub v. Sandoz Pharms. Corp.*, 101 F. Supp. 2d 852, 860 (S.D. Ohio 1998) ("Although the Plaintiff knew of [his wife's] injury at that time, the record does not suggest that he knew the cause of her injury, which is a requirement for the commencement of the statute of limitations.").

### B. Analysis Of Proposed Accrual Dates

#### 1. October 2014 CKD Diagnosis

Defendants first argue that Plaintiff Rieder attributed, or reasonably should have attributed, his kidney disease to Nexium in October 2014 when he was first diagnosed with CKD.[26] However, the undisputed facts, with all inferences drawn in Plaintiff Rieder's favor, do not support this position.

First, it is undisputed that Plaintiff Rieder's doctors never told him that they attributed his CKD to his ingestion of Nexium, thus the OPLA accrual trigger upon a plaintiff being "informed by competent medical authority" of an injury related to an exposure is inapplicable in this case.[27] Indeed, the evidence regarding Plaintiff Rieder's physicians' opinions is to the contrary: when Plaintiff Rieder asked his treating physicians about a possible connection between Nexium and CKD after his diagnosis, he was told that there was no scientific proof that Nexium could cause CKD, and his treating physicians attributed his CKD to other causes.[28] Dr. Jay Wallin testified that he did not document making any clinical assessment as to the cause of Plaintiff Rieder's renal insufficiency but, rather, would have discussed the

[26] Defs.' Summ. J. Mem. 2.
[27] *See* Rieder Dep. 82:2-5; Defs.' Summ. J. Mem. 17; Oral Args., 82:2-11, Apr. 5, 2022. It is not surprising that Plaintiff Rieder's treaters did not link his PPI use to his CKD given that Nexium's labeling did not warn of any risk that Nexium could cause CKD and Defendants have consistently maintained that there is no such risk warranting a warning.
[28] Rieder Dep. 82:9-83:17, 89:22-90:5.

findings with Plaintiff Rieder and talked about next steps, including a referral to a nephrologist.[29] Dr. Nicholas Stoycheff attributed Plaintiff Rieder's CKD to his hypertension and obesity.[30] Dr. Wallin's partner, Dr. Richard Oberlander, who also treated Plaintiff Rieder occasionally, testified that Plaintiff Rieder's CKD diagnosis was "just presumed due to his hypertension and diabetes."[31]

Defendants' arguments suggest that, notwithstanding his physicians' dismissal of a relationship between Plaintiff Rieder's Nexium use and his CKD diagnosis, Plaintiff Rieder satisfied the OPLA requirement because he speculated that his CKD diagnosis was related to his Nexium use. Defendants argue, without any citation to Ohio law, that the relevant inquiry is "when did the plaintiff *attribute* the alleged injury to the alleged exposure . . . *whether supported or not*[.]"[32]

But this is not Ohio law. The plain language of the OPLA accrual statute makes clear that the statute of limitations is not triggered by mere suspicion of a relationship between an injury and the defendant's action but by either actual knowledge obtained from a competent medical authority or where, "by the exercise

[29] PSC's Br. Opposing Defs.' Mots. for Summ. J. on Failure to Warn Preemption, Ex. 284 at 21:7-22:1, No. 2:17-md-2789, ECF No. 731-38.
[30] *See* PSC's Summ. J. Opp'n Mem. in *Rieder*, Ex. 5 at James Edward Rieder-ColumbusN-000051-000052, No. 2:17-md-2789, ECF No. 716-8.
[31] PSC's Br. Opposing Defs.' Mots. for Summ. J. on Failure to Warn Preemption, Ex. 285 at 54:15-21, No. 2:17-md-2789, ECF No. 731-39.
[32] Defs.' Summ. J. Mem. 12-13.

of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure[.]"[33]

The record demonstrates that Plaintiff Rieder did exercise reasonable diligence to attempt to discover the cause of his CKD by questioning his physicians and, as discussed below, undertaking internet research. However, the record does not support a conclusion that, as a matter of law, based on the results of that diligence, he "should have known" – not just suspected – that his CKD was related to his ingestion of Nexium.

Ohio law requires more than suspicion of a connection of a relationship between injury and exposure.[34] *Colby v. Terminix Int'l Co.* is instructive on the distinction between suspicion and knowledge. In that case, the plaintiff personally observed private sector and state personnel applying pesticides at her workplace over several years.[35] After suffering from laryngitis, the plaintiff consulted with an

---

[33] Ohio Rev. Code § 2305.10(B)(1).
[34] *See Grimme v. Twin Valley Cmty. Local Sch. Dist. Bd. of Educ.*, 878 N.E.2d 1096, 1100 (Ohio Ct. App. 2007) ("The standard is knowledge, not suspicion."); *see e.g. Burgess*, 609 N.E.2d at 142 (holding a prior version of R.C. 2305.10 that triggered the two-year statute of limitations for DES-related claims when plaintiff learned of a "*possibly*" DES-related injury violated the Ohio Constitution, noting "There is more than a semantic difference between knowing that one has a DES-caused injury and knowing that one *may* have such an injury. A degree of certainty is missing. Knowledge of the possibility that an injury may be related to a specific cause simply does not reach the constitutionally mandated threshold granting every person a remedy in due course of law for an injury done.") (emphasis in original).
[35] *Colby*, 1997 Ohio App. LEXIS 1043, at *4.

allergist, who informed her in 1992 that pesticides could be causing her symptoms and referred her to a specialist for diagnostic testing.[36] On January 21, 1993, the plaintiff's physician made a provisional diagnosis, prior to running tests on the plaintiff, that she was allergic to the pesticides, and then made a final diagnosis on March 8, 1993, when testing confirmed the diagnosis of "chemical sensitivity as a result of exposure to pesticides[.]"[37] The court found that using the January date for statute of limitations purposes was inappropriate because "alerting a person's suspicions of the need to investigate does not rise to the same level as receiving definite information by competent medical authority. Suspicion is not sufficient to trigger the discovery rule."[38]

In a similar vein, the court in *Telakowicz v. John Bunn Co.* found that the statute of limitations did not begin to run at any of the following points in time: (i) when the plaintiff was informed by a representative of the manufacturer of an oxygen concentrator that the product had malfunctioned, (ii) when the plaintiff took the concentrator to his doctor and was told that the malfunction could have been a possible cause of the injury, (iii) when he contacted an attorney to concerning the possibility of recovery, or (iv) when the attorney contacted the plaintiff's treating physicians to inquire about the relationship between the plaintiff's illness and the

---

[36] *Id.*
[37] *Id.*
[38] *Id.* at *8-9.

oxygen concentrator.[39] Instead, the court found that the statute only began to run in June of 1987, when plaintiff's physician confirmed in writing to plaintiff's attorney that the concentrator caused plaintiff's illness because that was the date when plaintiff's "suspicions of causation [were] confirmed."[40]

The facts here weigh even more strongly than those in *Colby* and *Telakowicz* toward a lack of adequate knowledge to trigger the limitations period. Unlike in those cases, Plaintiff Rieder's doctors affirmatively discounted the possibility that his CKD was related to his Nexium use.[41] Moreover, the Nexium labeling does not warn of CKD, and Defendants continue to assert that the scientific evidence does not support a causal relationship.

For these reasons and considering the record, taking all reasonable factual inferences in favor of the non-moving plaintiff, Defendants have not established as a matter of law that Plaintiff Rieder's claims accrued in October 2014 when Plaintiff Rieder was first diagnosed with CKD.

---

39 *Telakowicz v. John Bunn Co.*, No. CA-1024, 1993 Ohio App. LEXIS 3748, at *6-10 (Ohio Ct. App. July 23, 1993).

40 *Id.* at *10.

41 *Cf. Cacciacarne v. G.D. Searle & Co.*, 908 F.2d 95, 97-98 (6th Cir. 1990) (determining plaintiff's product liability claim was not time-barred even though "[i]t is undisputed that plaintiff thought the IUD might possibly have caused her problem. But her doctor did not know the cause. He did not rule out endometriosis or other possible causes. Because plaintiff's doctor did not know the cause, 'it would be illogical to hold [her] to a higher degree of knowledge than [her] …physician[].'" (quoting *Herr v. Robinson Mem'l Hosp.*, 550 N.E. 2d 159, 162 (Ohio 1990)).

**2. Early 2015: Cessation of Nexium**

Defendants argue that Plaintiff Rieder's actions, including conducting internet research and stopping the use of Nexium in early 2015, show sufficient evidence of knowledge to establish that his claim accrued as of early 2015.[42] While Plaintiff Rieder's internet research coupled with his questions to his physicians is clear evidence of the exercise of reasonable diligence, a review of the relevant evidence, with all reasonable inferences drawn on behalf of the non-moving party, fails to establish, as a matter of law and undisputed fact, that Plaintiff Rieder should have known at that time that his CKD was related to his use of Nexium.

Defendants rely on deposition testimony by Plaintiff Rieder concerning his internet research after his CKD diagnosis as to his decision in 2015 to discontinue using Nexium.[43] Plaintiff Rieder testified that his internet research was the impetus for him to consult with his physicians about whether the Nexium use might have been the cause of his CKD.[44] As discussed above, the record reflects that his physicians consistently told him that they did not believe his Nexium use was related to his CKD. Plaintiff Rieder also testified that he conducted internet research after his CKD diagnosis "to see if [he] could stop [the CKD]" and that he stopped taking

[42] *See* Defs.' Summ. J. Mem. 6.
[43] *Id.*
[44] Rieder Dep. 83:18-84:4.

Nexium "because [he] wanted to see what [he] could do to stop the progression of [his] disease."[45] He also "changed [his] lifestyle, changed [his] eating habits[.]"[46]

Defendants cite the above testimony as evidence that Plaintiff Rieder should have known that his development of CKD was related to his use of Nexium. However, it is reasonable to read such testimony as reflecting a suspicion by Plaintiff Rieder (refuted by his doctors) that Nexium might have been related in some way to his CKD and a hope that discontinuing Nexium, combined with other lifestyle changes, might limit the future progression of his CKD. But, as the *Colby* and *Telakowicz* cases discussed above make clear, suspicions and hopes do not establish that he "should have known" that his diagnosis was related to his Nexium use, particularly in the absence of any warning on the Nexium label that it might cause permanent kidney injury, which Defendants continue to deny. A jury could reasonably conclude that a decision to stop taking Nexium was not based on a belief that it had caused his CKD but rather a concern that it would exacerbate it going forward. Moreover, to the extent any of the testimony at issue does suggest a belief on Plaintiff Rieder's part that Nexium was related to or caused his CKD diagnosis, the testimony is ambiguous as to the date when such belief was formed.[47] What Plaintiff Rieder "should have known" in early 2015 is a question of fact for the jury

[45] *Id.* at 80:24-81:6, 84:21-22.
[46] *Id.* at 84:22-23.
[47] *See, e.g.*, Rieder Dep. 81:10-15.

to decide. The current factual record indicates that genuine issues of material fact remain and thus it does not support summary judgment as a matter of law.[48]

The cases cited by Defendants, *Charter One Bank F.S.B. v. Hamburger*[49] and *Gibson v. Park Poultry, Inc.*,[50] do not refute this analysis. Unlike in the present case, those plaintiffs had unambiguously stated their belief that their injury was related to their exposure more than two years before they filed their personal injury claims. In *Charter One Bank F.S.B.*, the plaintiff homeowner asserted counterclaims against the builder of her house, alleging that she developed "sick building syndrome" based on her exposure to moisture and water problems in the house.[51] Unlike Plaintiff Rieder, however, the plaintiff unambiguously stated in writing that she *knew* that the problems with her house were causing her illness in several letters written to the defendant bank more than three years before filing suit in 1999.[52]

Similarly, in *Gibson*, the plaintiff had been diagnosed with asthma the same year a chicken farm opened across the street from her house and "complained to the

---

[48] *See also Anderson*, 477 U.S. at 254; *Alley*, 2017 U.S. Dist. LEXIS 208742, at *4; *Coolspring Stone Supply, Inc.*, 10 F.3d at 148.

[49] No. L-01-1332, 2002 Ohio App. LEXIS 751 (Ohio Ct. App. Feb. 22, 2002) (applying discovery rule required a plaintiff to learn of the injury but not the connection between the injury and cause).

[50] No. 2006-CA-00296, 2007 Ohio App. LEXIS 3929 (Ohio Ct. App. Aug. 13, 2007).

[51] *Charter One Bank F.S.B.*, 2002 Ohio App. LEXIS 751, at *23.

[52] *Id.* at *28 (stating that the plaintiff had recently been treated for an acute respiratory infection caused by the mold and insects in her home and that her "health continue[d] to be effected [*sic*] by the house.").

Board of Health that 'whatever they were doing across the street was causing [her] to be irritated[.]'"[53] She stated in her affidavit that she suspected her "on-going sickness, pulmonary and respiratory problems, and eye infections throughout the time that the North Preston CAFO has been located across the street" were "associated with the airborne contaminants."[54] Yet the plaintiff did not ask her health care providers about the possible connection between the chicken farm and her symptoms until after filing her lawsuit in 2005.[55] Under these circumstances, the trial court found that the plaintiff "did not exercise 'reasonable diligence' to ascertain whether there was causation between her bodily injuries and the [d]efendants' conduct at any time prior to the filing of the instant action."[56] The Ohio Court of Appeals found that the trial court did not err in dismissing the plaintiff's personal injury claims as time-barred.[57]

The situation in *Gibson* stands in contrast to that of Plaintiff Rieder. In *Gibson*, the plaintiff did not ask any doctors until after filing her suit whether her injury was connected to her exposure despite her long-standing suspicions. Here, however, Plaintiff Rieder asked his physicians within months of his CKD diagnosis whether his CKD was related to his use of Nexium. Defendants do not assert that

---

[53] *Gibson*, 2007 Ohio App. LEXIS 3929, at *12.
[54] *Id.* at *11.
[55] *Id.* at *12.
[56] *Id.* at *11-12.
[57] *Id.* at *14.

Plaintiff Rieder failed to exercise reasonable diligence in seeking to determine whether his CKD diagnosis was related to his Nexium use. Rather, their position appears to be that Plaintiff Rieder's subsequent decision to discontinue Nexium and make other lifestyle changes was evidence of his knowledge that there was in fact a relationship between his CKD diagnosis and his Nexium use, notwithstanding the statements by his physicians to the contrary. It is possible that a jury may ultimately agree that Defendants' interpretation of the facts is a correct one, but it is certainly not the only reasonable one and therefore is not a determination that can be made on a motion for summary judgment.

**3. September 2016: Retention of Counsel**

At oral argument, Defendants largely abandoned the position in its brief regarding 2016 as a trigger date for the statute of limitations when their counsel acknowledged that if "September 2016 is an operative date, then [Plaintiff Rieder] would be saved by the tolling agreement[.]"[58] That concession alone is dispositive. Even if it were not, Defendants' argument that September 2016 triggered the running of the statute of limitations is without merit.

In their brief, Defendants cite no law in support of the proposition that Plaintiff Rieder's retention of counsel in September 2016 evidences knowledge sufficient to trigger the statute of limitations. I have not located any law in Ohio or elsewhere

[58] Oral Args., 89:9-90:1, Apr. 5, 2022.

supporting this proposition. Indeed, the limited case law on the topic is to the contrary.[59]

It is not surprising that courts have found that retention of counsel is not an automatic trigger of the statute of limitations. The fact that an individual seeks advice of counsel does not necessarily mean that the individual has knowledge of a particular injury or condition or that it was caused by the conduct of another party. People often retain counsel to seek advice as to whether any sort of claim against anyone may exist. To be sure, in some cases, counsel may be sought to pursue a claim that a person already believes exists. But retention of counsel, standing alone, is at most an uncertain, ambiguous indication of an individual's level of knowledge as to a particular injury or condition and its cause.

In their reply brief, Defendants make a second argument without any basis or legal support: that because numerous plaintiffs in other cases (not including Plaintiff Rieder) have purportedly failed to comply with the terms of the Tolling Agreement, Plaintiff Rieder should be prevented from invoking the terms of the Tolling

---

[59] *See, e.g.*, *Yacob*, 101 F. Supp. 2d. at 860 (holding plaintiff's survivorship claim was not time-barred even after plaintiff consulted three attorneys about possible legal action stemming from his wife's death because "the record suggests that the Plaintiff generally was suspicious" of the circumstances surrounding his wife's death) (cited in *Grimme*, 878 N.E.2d at 1099-1100); *Telakowicz*, 1993 Ohio App. LEXIS 3748, at *10 (finding retention of counsel insufficient to establish knowledge triggering limitations period).

Agreement.[60] Defendants, however, do not assert that Plaintiff Rieder has violated the terms of the Tolling Agreement, and Plaintiff Rieder's case is not subject to any of Defendants' motions to dismiss based on the Tolling Agreement. Defendants cite no case law to support their position that this Court should attribute the behavior of counsel or unrelated plaintiffs in other cases in this MDL to Plaintiff Rieder and thus prevent him from invoking the Tolling Agreement. Rather, the cases cited by Defendants make clear that the doctrine of "unclean hands" is applied to deny an equitable remedy to a party because of that party's own behavior.[61] Defendants have raised no basis in fact or law for this Court even to consider applying the doctrine of "unclean hands" to Plaintiff Rieder.

For all of these reasons, I conclude that the abandoned argument that the statute of limitations began to run in September 2016 and expired before Plaintiff Rieder filed suit is meritless as a matter of law and recommend that it be rejected.

## CONCLUSION

For the reasons set forth above, I recommend that Defendants' motion for summary judgment on statute of limitations grounds be denied. With respect to the two potentially operative dates identified by Defendants (October 2014 and early 2015), disputed issues of material fact preclude summary judgment. It should be up

[60] *See* Defs. Reply in Supp. of Summ. J. as to Pl. James Rieder on Statute of Limitations Grounds 23-25, ECF No. 53.

[61] *See id*. at 24.

to the jury to decide those factual issues at trial. Defendants have abandoned their arguments with respect to the September 2016 date, which in any event have no legal or factual support and therefore should be denied.

A proposed order is attached.

Respectfully submitted,

Date: June 27, 2022

__________________________

ELLEN REISMAN
Special Master